# Exhibit A

| Agents (full style and address) | | |
|---|---|---|
| | **BBC Booking Note** | |
| | www.bbc-chartering.com | |

| Carrier (full style and address) | | |
|---|---|---|
| BBC Chartering Carriers Gmbh & Co. KG<br>Hafenstrasse 12,<br>26789 Leer<br>Germany<br>As agents only for and on behalf of the carrier | Place and date<br>Singapore, 2 December 2016 | Booking No. 16-640 |
| | Vessel<br>MV BBC tbn or sub (description/plan under http://www.bbc-chartering.com/toolbar/fleet.html ) | |

| Merchant** (full style and address) | |
|---|---|
| Siemens Wind Power, Inc<br>4400 Alafaya Trail<br>FL 32826-2399 Orlando<br>UNITED STATES | Time for shipment (about)<br>- Laydays: As per attached schedule / lot sizes (Appendix 1) |
| | Port of loading* (Carrier's berth unless otherwise specified)<br>Nangang, Shanghai, China |
| | Port of discharge (Carrier's berth unless otherwise specified)<br>Corpus Christi, USA |

| Container No./Seal No./Marks and Numbers<br>(if available) | Number and kind of packages; description of cargo<br>(if available) | Gross weight, kg<br>(if available) | Measurement, m³<br>(if available) |
|---|---|---|---|
| - Cargo: 513 x B53 blades in Jupiter/Ariel stacking frames as per attached p/l | | | |

| Freight details and charges | Freight (state prepayable or payable at destination)<br>See freight details | |
|---|---|---|
| USD 15.000 liner terms hook/hook per blade<br><br>- Freight payable within 7 days after completion of loading directly into Carrier's nominated bank account and deemed earned pro rata as cargo is being loaded on board discountless and non returnable vessel and/or cargo lost or not lost | Daily detention and/or demurrage rate<br>USD 12,500.- pdpr | |
| | Shippers declared value | Declared value charge |

Special terms, if agreed (including Liner Terms or F.I.O.S. Terms for loading/discharging)

- Latest arrival: As per attached
- Carriers berth both ends
- Carriers agent both ends
- Deck option for blades
- Blades in Ariel system stackable in 3 tiers
  Blades in Jupiter system stackable in 4 tiers
- Block stow dimensions for 24 blades in Ariel: As per attached
  Block stow dimensions for 24 blades in Jupiter: As per attached
- Hooking on/off charges for merchants a/c
- Part charter
- Carrier resposible for L/S/D
- Carriers L/S/D standard to apply:
  Acceleration calculation based on DNV Pt.3 Ch.1 Sec 4.
  Securing based on IMO CSS Code Annex 13 including friction as per table 5
  Stopper calculation based AISC Manual for Steel Construction
- Carriers bunker clause to apply:
  Bunker rates for this tender are based on IFO 380 at USD 270.00 pmt. Should the average Bunker Platts based on of the previous month of shipment
  At Singapore, be higher than USD 270.00 pmt the freight rate is to be adjusted by USD 125.00 per blade for every USD 10,00 interval, either
  decrease or increase in bunker lvl.
- Any special lifting equipment to be supplied by merchants
- Any assembly tools for frames to be supplied by merchants
- Any wharfages, dues, tolls, dockages, charges on cargo for merchants account
- Any dues, tolls, charges on vessel for owners account
- Cargo to be packed in seaworthy condition as per owners stowage plan with CoG clearly marked
- Cost for method statement, if required: USD 5.000
- Nett of comm
- Otherwise as per carrier's booking note and bill of lading terms (full wording under www.bbc-chartering.com); b/l fee of USD 75 per b/l to apply

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof, which shall prevail over any previous arrangements and which shall in turn be superseded (except as to dead freight, detention, demurrage and breach of damages) by the terms of the Bill of Lading.

| Signature (Merchant) | Signature (Carrier) As agents for and on behalf of the carrier<br>BBC Chartering USA, LLC, Agents -<br>6565 West Loop South, Suite 200<br>TX 77401 Bellaire · USA<br>www.bbc-chartering.com<br>BBC Chartering Carriers Gmbh & Co. KG |
|---|---|
| *Sally Chope* (signature)<br>Siemens Wind Power, Inc | |



# BBC Bill of Lading Terms and Conditions

**1. Definition**
"Merchant" includes the charterer, the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
(a) Should the Carrier anticipate that, for whatever reason, the vessel will not be ready to load the cargo by the end of the shipping period, it will notify the Merchant thereof without delay stating the expected date of the vessel's readiness to load and asking whether the Merchant will exercise its option of cancelling the carriage, or agree to a new shipping period.
(b) The Merchant must exercise its option within 48 running hours after the receipt of the Carrier's notice. If the Merchant does not exercise its option of cancelling, then the new shipping period shall apply.
(c) The provisions of sub-clause (b) of this clause shall operate any time the Carrier requests amendment of the shipping period.

**3. Liability under the Contract**
(a) Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there are no such enactments compulsorily applicable, the terms of Articles I-VIII inclusive of said Convention shall apply. In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. Where the Hague Rules or part of them or the Hague-Visby Rules apply to carriage under this contract, the applicable rules, or part of them, shall likewise apply to the period before loading and after discharge where the Carrier (or his agent) have custody or control of cargo. Unless otherwise provided herein, the Carrier shall in no case be responsible for loss of or damage to deck cargo and/or live animals.
(b) The Carrier shall under no circumstances be liable for consequential damages or losses including damages for delay. In the event that the Carrier is held to be liable for damage or loss other than damage to the cargo, such liability shall in any event be limited to the freight covered by its Bill of Lading or to the limitation amount determined by sub-clause 3(a) or Special Clause B, whichever is lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Special Clauses.

**4. Law and Jurisdiction**
Except as provided elsewhere herein, any dispute arising under or in connection with this Bill of Lading shall be referred to arbitration in London. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) terms. The arbitration Tribunal is to consist of three arbitrators, one arbitrator to be appointed by each party and the two so appointed to appoint a third arbitrator. English law is to apply.

**5. The Scope of Carriage**
(a) The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging or other cargo operations and maintenance of vessel and crew. The Carrier shall have the liberty of restowing the cargo and loading and discharging other cargoes for the account of other Merchants for ports enroute or not enroute.
(b) Any deviation, change in discharge port or time lost due to environmental hazards or due to avoidance of same to be for Merchant's account and such deviation shall not be considered unjustified.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship, land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed or noted herein.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier and in addition the Merchant shall be liable to pay the Carrier detention at the rate USD 20,000 per day pro rata, payable day by day (or such other sum as is stated on the face of this Bill of Lading) for the period of any delay.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo, the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction.
If the Merchant or his Agent fails to take delivery of the cargo as fast as the vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier and in addition, the Merchant shall be liable to pay the Carrier detention at the rate USD 20,000 per day pro rata, payable day by day (or such other sum as is stated on the face of the Bill of Lading) for the period of any delay. All delivery takes place at the end of the vessel's hook unless otherwise specified.
(f) The Merchant shall be responsible for providing all necessary equipment for loading and discharging, including spreader bars, lifting frames, slings and saddles.
(g) Securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative to be for Merchant's account.
(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.
(i) Cargo to be carried on terms liner in/free out, free in/out, free in/out shall be loaded and/or discharged (as applicable) by the Merchant free of any risk, liability, cost and expense whatsoever to the Carrier. The Merchant shall be liable to the Carrier for the negligence of the stevedores whom the Merchant shall appoint. Unless otherwise stated, demurrage to be US $20,000 per day pro rata and payable day by day.
(j) Notice of Readiness may be tendered on arrival, at any time, day or night, all weekend days and whether in port or not, whether in berth or not, whether customs cleared or not, whether in free pratique or not.
(k) Should the vessel not be able to berth for any reason including congestion after 72 hours after arrival at or off the port, the Carrier has the option to load the vessel and cancel this contract. If the terms are Free In or Merchants or Shippers' berth, the Merchant shall owe deadfreight. Should for any reason the vessel be unable to discharge the cargo within 5 days of arrival at or off the discharge port, the Carrier shall be at liberty to deviate to any other port whatsoever and there discharge the cargo at the Merchant's expense and such alternative discharge shall be deemed to be fulfilment of the contract of carriage.

**11. Freight, Deadfreight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned and due upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest of 8 per cent above the official dealing rate of the Bank of England (the base rate) as announced shall start to run on the fifteenth (15) day after the freight, demurrage, detention and/or other charge whatsoever becomes due and owing.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and replacing or piecing of the cargo for any of the aforementioned reasons. The Merchant shall be specifically liable for all costs, expenses, losses and liabilities incurred due to non-approved or contaminated or infested dunnage supplied by Merchants including all costs of transporting the cargo to another port, if required.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage or classification of the vessel including all Suez or Panama Canal charges.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses, damages and or losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) Payments, including partial payments made pursuant to this Contract are with prejudice, non-returnable, and will be credited to the amount due. Acceptance of a partial payment under no circumstances waives the full amount due and owing.
(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight plus additional costs as liquidated damages that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.
(g) Any additional insurance premium charged by vessel's underwriters for breaching trading limitations (INL) or war risk exclusions to be for Merchant's account. Any extra insurance procured (including war risks) or costs incurred to protect vessel, crew, and cargo against risk of piracy, rebels or terrorists shall be paid by Merchants upon request of Carrier.
(h) In the event that the Merchant fails for whatever reason to tender or load the cargo or part thereof, the Carrier shall be entitled to damages and/or deadfreight in respect of the cargo not loaded and such damages shall be considered liquidated damages and quantified on the basis of the applicable freight rate, less stevedoring and port costs saved as a consequence. The Carrier shall not be required to call the loadport in order to be entitled to damages and/or deadfreight under this paragraph. If the vessel has arrived at the loadport but the cargo is unavailable for whatever reason, the Carrier may, at the Carrier's election, leave after 48 hours and full deadfreight shall be due.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due (including freight, detention, demurrage, and other costs or expenses) under this Contract and other contracts between the Merchant and the Carrier and costs of recovering the same (including attorney's fees) and shall be entitled to sell the cargo privately or by auction to satisfy any claims or liens at the specified discharge port or other port.

**13. General Average and Salvage**
(a) General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.
(b) If the Carrier decides not to declare General Average for whatever reason and the nature of the event was similar to one for which General Average could have been declared the Carrier will be entitled to reimbursement of his expenses from the Merchant on a pro rata basis of the amount loaded on board.

**14. Both-to-Blame Collision Clause** (This clause to remain in force even if unenforceable in the courts of the United States of America)
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, Piracy, etc.**
(a) The Master and the Carrier shall be at liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or any body acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike operations, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port. The Master may in his absolute discretion decide to proceed in a convoy or a joint sailing with other vessels or to chose an alternative, non-direct route to protect the crew, vessel and cargo. Any time, including waiting time thereby lost, shall be for the account of the Merchant calculated at the detention/demurrage rate. Any additional costs including the additional cost of time lost sailing an alternate route (e.g., rounding Africa) shall be for Merchant's account and shall be calculated at the detention or demurrage rate.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Suez Canal and Panama Canal**
Merchants acknowledge that the freight paid or to be paid under this Contract assumes that the vessel will transit through the Suez Canal or Panama Canal where such transit is the shortest and/or most convenient route to the discharge port. Merchants are aware that due to the current circumstances of political unrest in Egypt, it is possible that the Suez Canal may be blocked, closed or that the vessel may encounter significant delays (more than 72 hours waiting time) and Merchants agree to assume this risk. In such event, at the Master's discretion, the vessel may sail around Africa or via an alternative route and all such extra time shall be for the Merchants' account at the detention rate (US $20,000 or other such sum stated on the Bill of Lading) pro rata as well as any additional costs, including bunkers. Alternatively, the Master may discharge the cargo at a close or convenient port and all of the Carrier's obligations under this contract shall be considered fulfilled. Likewise, in the event that the Panama Canal is blocked, closed or that the vessel encounters significant delays (more than 72 hours waiting time), at the Master's discretion, the vessel may sail around South America or via an alternate route and all such extra time shall be for the Merchants' account at the detention rate (US $20,000 or other such sum stated on the Bill of Lading) pro rata as well as any additional costs including bunkers. Alternatively, the Master may discharge the cargo at a close or convenient port and all of the Carrier's obligations under this contract shall be considered fulfilled.

**17. Defences and Limits of Liability for the Carrier, Servants, Agents and Managers**
(a) It is hereby expressly agreed that no servant, agent or manager of the Carrier shall have any liability whatsoever to the Merchant or any other party under this contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this fulfilment clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall apply and be available and shall extend to protect every such servant, agent or manager of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant, agent or manager of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof including attorney's fees.
(d) For the purposes of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this contract of carriage.
(e) The provisions of this clause shall specifically apply, but not be limited to all independent contractors, brokers, stevedores, port captains, commercial and technical managers, and transportation providers employed by the Carrier.
(f) Any reference to a letter of credit or invoice number shall not be considered to be a declaration of value of the cargo. Unless the value of the cargo is declared by the Merchant in the appropriate box on the front of the Bill of Lading, the value of the cargo is unknown to the Carrier.

**18. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**19. Packaging**
The Merchant is responsible for providing cargo that is properly packed and internally secured for ocean transportation, and that all centres of gravity are marked, proper skids are attached and, if required, all cradles used for securing the cargo are fit for the purpose and the cargo is properly secured within and to the cradles/skids. The Merchant shall fit the cargo and/or cradles as appropriate with suitable and marked lifting lugs and sufficient and marked lashing points for the cargo and/or cradle to be properly lifted and secured. If flexi-tanks or similar receptacles whatsoever are carried inside the containers the Merchant is responsible for declaring them and providing detailed description including the MSDS of the liquid inside the receptacle. If the cargo is not flat at the bottom, the Merchant is to provide cargo plans including a detailed footprint sketch prior to loading and suitable packaging to protect any lifting, lashing and securing belts, slings, ropes and chains etc. from sharp or abrasive edges on the cargo and from loads being concentrated in one point, as this may cause the lifting/securing equipment to break. Any special dunnaging, spreader bars or other special equipment required to load, discharge or secure the cargo is to be for the Merchant's risk and account. Any damage to the cargo and any delay resulting from the Merchant's failure to comply with the terms of this clause shall be for the Merchant's account and the Merchant shall indemnify the Carrier for all losses whatsoever including any damage to the Vessel or other cargo onboard and any loss of time.

**20. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and Similar Articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container, or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and other similar articles of transport used to consolidate goods.

## SPECIAL CLAUSES

**A. Detention**
In addition to Clauses 10(d) and (e), detention shall also be paid by the Merchant, at the same rate and day by day, for any delay in waiting for loading or discharge at or off the port or berth, including time lost due to congestion, swell or tide, shifting, renomination of the berth due to Merchant's request, impossibility to leave the berth after loading or discharge is completed or any other reason whatsoever and any consequences thereof. The Merchant shall also be liable for any extraordinary costs while the vessel is on detention.

**B. U.S. Trade. Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody. For US trades, the terms on file with the U.S. Federal Maritime Commission shall apply to such shipments.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit. If despite the provisions of sub-clause 3(a), the Carrier is found to be liable for deck cargo, then all limitations and defenses available under U.S. COGSA (or other applicable regime) shall apply.
(iii) For purposes of calculating the Carrier's liability under subsection (ii), the number of pieces or units listed in the box on the face of this Bill of Lading headed "Number and kind of packages; description of cargo" shall conclusively establish the number of packages. If the cargo being carried is not a package, then unless expressly stated otherwise, freight is calculated on the number of each unpackaged vehicles or other physical pieces of unpackaged cargo, including articles or things of any description whatsoever except goods shipped in bulk, and each such piece of unpackaged cargo shall conclusively be deemed one customary freight unit.
(iv) Whenever the U.S. COGSA applies, whether by virtue of carriage of cargo to or from the US or otherwise, any dispute arising out of or in connection with this Contract evidenced by this Bill of Lading shall be exclusively determined by the United States District Court for the Southern District of Texas, and in accordance with the laws of the United States. Merchant further agrees to submit to the jurisdiction of the Southern District of Texas and to waive any and all objections to venue.

**C. Security Clause**   New York, New York
(i) If the vessel calls any country that requires security filing including but not limited to the United States, Canada, Brazil and the European Union member states, including any of their territories, regardless whether this country is a port of loading or discharge for Merchant's cargo, the following provisions shall apply with respect to any applicable regulations or measures:
The Merchant shall provide the Carrier with all information needed for security filing no later than 48 hours prior to vessel's loading or if the decision to call this country requiring security was made by the Carrier after the vessel had sailed not later than 48 hours after the Merchant received Carrier's request to provide such information.
(ii) Unless caused by the Carrier's negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant country's authorities shall count as time of detention.
(iii) Any fines, penalties, fees, costs, expenses, damages (including consequential damages and attorney's fees) and losses that the Carrier may incur, even if levied against the vessel, that arise out of security measures imposed at any port shall be for the Merchants' account if not due to Carrier's negligence.

© 2013 BBC Chartering   Version: 07-2013 (A4)